IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WILLIAM A. TYLER, III,

    *Plaintiff,*

vs.

DAN SCHNURR, *et al.*,

    *Defendants.*

Case No. 20-CV-03242-EFM-KGG

**MEMORANDUM AND ORDER**

Proceeding pro se, Plaintiff William A. Tyler, III, sues Dan Schnurr, in his official capacity as warden of the Hutchinson Correctional Facility ("HCF"), as well as six other HCF employees for violation of his constitutional rights under 42 U.S.C. § 1983. Now before the Court is Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 23). For the reasons explained below, the Court grants Defendants' motion.

**I.    Factual and Procedural Background**[1]

At the time he filed suit, Tyler was an inmate in the Hutchinson Correctional Facility. Tyler asserts three claims against the various defendants. First, Tyler alleges he has been subjected to living conditions that violate the Eighth and Fourteenth Amendments. Tyler asserts that he was placed in administrative segregation at HCF, specifically in what is known as an "MRA cell"—

---

[1] The facts are taken from Plaintiff's Complaint and are viewed in the light most favorable to Plaintiff.

meaning a "more restricted area." According to Tyler, MRA cells are 8-feet by 5-feet and have an added cinderblock front porch, a slam-cell steel door, and disconnected toilets. He further asserts that the MRA cells have no natural light, effectively turning the cells "into sensory deprivation torture chambers."[2] Tyler asserts that over the course of two years, he has been held in MRA cells for 6.5, 10.5, and 3.5 month intervals. He asserts that Defendants Schnurr, Major Van Hoos, Lieutenant Stiggins, and Unit Team Manager Bell exhibited deliberate indifference to his right to be free of cruel and unusual punishment by leaving him on MRA status knowing about the lack of natural light and the "unsanitary, inhumane environment caused by the unhooked toilet."[3]

Next, Tyler asserts that three unknown HCF employees used excessive force against him, causing him serious injury in violation of his right to be free from cruel and unusual punishment and his right to due to process of law. Tyler asserts that on August 13, 2019, he was approached by Lieutenant Stiggins for a cell move, to be placed back in an MRA cell after approximately two months out of the MRA cell. Tyler admits that he refused to move. Tyler asserts that he was then sprayed with O.C. pepper spray by three unknown HCF employees, followed by a spray of "a weaponized 'vapor.' "[4] The three employees then stormed into Tyler's cell, using a "shock shield" and "stunned Plaintiff unconscious."[5]

The employees beat Tyler on his head, body, and face. The employees struck Tyler in the face, causing him to hit his head on the concrete bed in his cell. The employees then chained

---

[2] Plf.'s Compl., Doc. 1, at 7.

[3] *Id.* at 8.

[4] *Id.* at 9.

[5] *Id.*

Tyler's wrists and ankles so tightly that Tyler experienced permanent scarring on his ankles and wrists. The employees further intentionally pulled and squeezed Tyler's testicles while cutting off his clothes. The employees then drugged Tyler and marched him naked back to the MRA cells. As a result of the incident, Tyler's face "was blackened top to bottom on one side" and his left eye never fully healed.[6] Tyler experienced scarring from cuts on his lips and face, and a concussion.

Tyler never filed a complaint regarding this incident, reporting that he feared reprisals or legal retribution. Tyler asserts that several inmates have been beaten by the "black suits" in a "common and unchecked theme at HCF" and that he feared he would be beaten for making such a complaint.[7] Tyler also asserts that feared that he would be charged in Reno County Court with assault on the officers or with other crimes if he made a report. Tyler alleges that inmates are often beaten and then charged with battery at HCF.

Finally, Tyler asserts that Schnurr, Van Hoos, Stiggins, and Bell prevented him from receiving adequate mental health care in violation of the Eighth and Fourteenth Amendments. Tyler is diagnosed with bipolar disorder. Tyler alleges that he was a member of a behavioral therapy group at HCF while not on MRA status. Tyler had hopes of attending a substance abuse program and an anger management course at HCF before he was transferred back to MRA status. While on MRA status, Tyler was unable to attend his behavioral therapy group or any other mental health programming. Tyler was also denied access to books, paper, information packets, and colored pencils—items which Tyler identified as mental health aids. Tyler reports that he was denied all mental health treatments except medication while on MRA status. He asserts that he

---

[6] *Id.* at 10.

[7] *Id.*

greatly deteriorated during his two years on MRA status, including experiencing increased paranoia and suicidal ideation.

Tyler was released from HCF in August 2021.

## II. Legal Standard

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction."[8] Under Rule 12(b)(1), the Court may dismiss a complaint based on a lack of subject matter jurisdiction. Generally, a Rule 12(b)(1) motion takes one of two forms: a facial attack or factual attack.[9] "[A] facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."[10] A factual attack goes "beyond allegations contained in the complaint and challenge[s] the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations."[11] A court therefore "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."[12]

---

[8] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[9] *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425 (2001).

[10] *Holt*, 46 F.3d at 1002–03 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

[11] *Id.* at 1003 (citing *Ohio Nat'l Life*, 922 F.3d at 325).

[12] *Id.* (citations omitted).

**B.      Motion to Dismiss for Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[13] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[14]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[15]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[16] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[17]

Because Plaintiff is proceeding pro se, the Court must be mindful of additional considerations.  "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[18]  There are limits, however, to the Court's leniency.  "[T]he court will not construct arguments or theories for the plaintiff in the

---

[13] Fed. R. Civ. P. 12(b)(6).

[14] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[15] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[16] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[17] *Iqbal*, 556 U.S. at 678–79.

[18] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

absence of any discussion of those issues."[19]  Additionally, a pro se litigant is not excused from complying with the rules of the Court and is subject to the consequences of noncompliance.[20]

For example, when a pro se plaintiff fails to timely file a response, the Court will consider and decide the motion as uncontested, and ordinarily, will grant the motion without further notice.[21]  At the motion to dismiss stage, however, lack of response alone is not enough to grant the moving party's motion.[22]  Rather, the court "must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted."[23]

### III. Analysis

### A. Sovereign Immunity Bars Tyler's Claims for Monetary Damages Against Defendants in Their Official Capacities

Defendants first argue that sovereign immunity bars Tyler's claims against them in their official capacities.  Tyler brings official capacity claims against all defendants and personal capacity claims against Van Hoos, Stiggins, Bell, and the three unknown correctional officers.

The Eleventh Amendment grants immunity to the States from "any suit in law or equity, commenced or prosecuted" by their own citizens.[24]  This includes actions for damages against

---

[19] *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

[20] *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citation omitted).

[21] D. Kan. R. 7.4(b).

[22] *Persik v. Manpower Inc.*, 85 F. App'x 127, 130 (10th Cir. 2003) (citation omitted).

[23] *Id.*

[24] U.S. CONST. amend. XI; *see also Guttman v. Khalsa*, 669 F.3d 1101, 1111 (10th Cir. 2012) (citing *Bd. of Trs. v. Garrett*, 531 U.S. 356, 363 (2001)).

state agencies and officials acting in their official capacities.[25]  The defense of sovereign immunity is therefore applicable unless Kansas has waived the defense or Tyler "seeks only prospective injunctive or declaratory relief against state officials for an ongoing violation of federal law."[26] Kansas has not waived sovereign immunity against § 1983 claims in federal district court[27] and "§ 1983 does not abrogate a state's sovereign immunity."[28]  The Court therefore lacks subject matter jurisdiction over Tyler's claims for monetary damages against Defendants in their official capacities.  Sovereign immunity does not bar Tyler's request for injunctive relief against Defendants in their official capacities, however.[29]

### B. Tyler's Request for Injunctive Relief Against Defendants Is Moot

Turning to Tyler's request for injunctive relief, Tyler asks that the Court order Defendants to upgrade HCF's facilities to constitutional standards and to declare a class.  Defendants argue that Tyler's request is moot.  The Court agrees.  "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."[30]  Tyler was released from HCF in August 2021.  Tyler therefore no longer has a legally cognizable interest in the standards maintained at HCF, making his request for injunctive relief against Defendants in their official

---

[25] *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019) (citing *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013)).

[26] *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (citation omitted).

[27] *Wendt v. Univ. of Kan. Med. Ctr.*, 274 Kan. 966, 59 P.3d 325, 335 (2002) (holding that Kansas "has not waived its sovereign immunity from suits seeking damages" under § 1983).

[28] *Muscogee Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010) (citation omitted).

[29] *Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007).

[30] *N.M. Health Connections v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1138, 1159 (10th Cir. 2019) (citation omitted).

capacities moot.[31]  Further, Tyler lacks standing to bring a class action on behalf of inmates remaining in HCF.[32]  The Court therefore lacks subject matter jurisdiction over Tyler's request for injunctive relief.[33]  Tyler's release does not moot his remaining claims for monetary damages against Defendants in their personal capacities, however.[34]

## C.    Tyler Failed to Exhaust His Claims Regarding the Size of His MRA Cell and the Incident with the Unidentified HCF Employees

Because Tyler's official capacity claims are either barred by sovereign immunity or moot, Tyler's only remaining claims are those for monetary damages against Defendants in their personal capacities.  His claims are as follows: (1) Defendants Van Hoos, Stiggins, and Bell exhibited deliberate indifference to his right to be free of cruel and unusual punishment by leaving him on MRA status; (2) three unknown HCF employees used excessive force against him, causing him serious injury in violation of his right to be free from cruel and unusual punishment and his right to due process of law; and (3) Van Hoos, Stiggins, and Bell prevented him from receiving adequate mental health care in violation of the Eighth and Fourteenth Amendments.[35]

Defendants now argue that Tyler failed to exhaust his claims regarding the size of his MRA cell and the incident with the unidentified HCF employees.  The Prison Litigation Reform Act

---

[31] *See Jordan v. Sosa*, 654 F.3d 1012, 1027–28 (10th Cir. 2011) (collecting cases concluding that a prisoner's claim for injunctive relief is moot upon release from confinement).

[32] *See Whitington v. Ortiz*, 307 F. App'x 179, 191 (10th Cir. 2009) ("[Plaintiff] lacks standing to attempt to re-regulate the entire CDOC system, or to sue directly or indirectly on behalf of anyone but himself."); *see also Lewis v. Casey*, 518 U.S. 343, 349–50 (1996).

[33] *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) ("It has long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' ") (citation omitted).

[34] *See Williams v. Wilkinson*, 645 F. App'x 692, 696–97 (10th Cir. 2016).

[35] Although Tyler also asserts his first and third claims against Schnurr, he does not assert them against Schnurr in his personal capacity.

("PLRA") provides that "[no] action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[36]  "[B]ut it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."[37] Thus, inmates in the custody of the Kansas Department of Corrections must follow the grievance procedure outlined in K.A.R. 44-15-102. Exhaustion is an affirmative defense and Defendants bear the burden of asserting the failure to exhaust in their responsive pleadings.[38] The Tenth Circuit has cautioned that "only in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse."[39]

    1.    *Tyler Failed to Exhaust His Administrative Remedies Regarding His MRA Cell Size*

Tyler's argument that Defendants deprived him of his right to be free from cruel and unusual punishment by placing him on MRA status stems from three primary complaints: (1) the MRA cells are too small, (2) the MRA toilets are not flushed at regular intervals causing an unsanitary environment, and (3) the MRA cells lack sunlight. Citing to the *Martinez* Report, Defendants argue that Tyler failed to exhaust his administrative remedies regarding the size of his MRA cell as required by K.A.R. 44-15-102. Generally, the Court does not consider the *Martinez*

---

[36] 42 U.S.C. § 1997e(a).

[37] *Jones v. Bock*, 549 U.S. 199, 218 (2007).

[38] *Freeman v. Watkins*, 479 F.3d 1257, 1260 (10th Cir. 2007).

[39] *Id.* (citation omitted).

Report in resolving motions to dismiss.[40]  "However, an uncontroverted report may serve as the basis for a dismissal."[41]

Here, Tyler's Complaint states that "[a]ll MRA issues were exhausted on grievances" and cites to Exhibit B to his Complaint.[42]  Although Exhibit B includes Tyler's filed grievance regarding the MRA cells, his grievance did not contain complaints regarding the cell-size issue.[43]  Thus, it appears from the face of the Complaint and attached exhibits that Tyler did not exhaust his complaint regarding the size of the MRA cells as required by K.A.R. 44-15-102.  Although "[p]laintiffs should be afforded an opportunity to counter the exhaustion defense,"[44] Tyler failed to respond to Defendants' Motion to Dismiss to dispute their assertion that he did not grieve the cell-size issue and his response to the *Martinez* Report also did not indicate that he had grieved the issue.  The Court therefore dismisses Tyler's argument regarding the size of the MRA cells without prejudice.[45]

---

[40] *See Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the *Martinez* report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes.").

[41] *Gallagher v. Shelton*, 587 F.3d 1063, 1071, n.7 (10th Cir. 2009) (citation omitted).

[42] Plf.'s Compl., Doc. 1, at 7.

[43] Plf.'s Ex. B, Doc. 1-1, at 21–32.

[44] *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011).

[45] *See Jones*, 549 U.S. at 215–16 (holding that although plaintiffs need not affirmatively plead exhaustion, failure to exhaust may still properly be a basis for dismissal for failure to state a claim); *see also Gallagher*, 587 F.3d at 1068 ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be *without* prejudice.") (citation omitted).

      2.      *Tyler Failed to Exhaust His Administrative Remedies Regarding the Incident with the Unidentified HCF Employees*

Defendants next argue that Tyler failed to exhaust his administrative remedies regarding the incident with the unidentified HCF employees. Tyler admits this defect in his Complaint but asserts that he did not file a grievance due to fears of reprisal. The Tenth Circuit has "recognized that an administrative remedy is not 'available' under the PLRA if 'prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of the administrative remedy.' "[46] Thus, "when a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation, that process can no longer be said to be 'available.' "[47] To establish that the administrative remedy was not available to him, Tyler must allege:

> (1) that the threat or intimidation actually did deter [him] from lodging a grievance or pursuing a particular part of the prison administrative process; and (2) that the threat or intimidation would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the prison administrative process that the inmate failed to exhaust.[48]

Tyler has failed to allege facts sufficient to meet this burden. Tyler makes only conclusory allegations regarding "reprisals" as a "common and unchecked theme at HCF."[49] Although Tyler states that he could "name several inmates who've been beaten," he fails to do so.[50] "A plaintiff seeking to be excused from the exhaustion requirement . . . must do more than make unsupported

---

[46] *Tuckel*, 660 F.3d at 1252 (alteration and citations omitted).

[47] *Id.* at 1252–53.

[48] *Id.* at 1254.

[49] Plf.'s Compl., Doc. 1, at 10.

[50] *Id.*

-11-

conclusory allegations of misconduct by prison officials."[51] Because Tyler has failed to plausibly allege that prison officials inhibited him from filing a grievance, the Court dismisses his claim against the three unidentified HCF employees without prejudice.[52]

**D.     Tyler Has Failed to State a Claim for Violation of His Constitutional Rights**

Now remaining are Tyler's personal capacity claims against Defendants Van Hoos, Stiggins, and Bell for exhibiting deliberate indifference to his right to be free of cruel and unusual punishment by leaving him on MRA status and preventing him from receiving adequate mental health care in violation of the Eighth and Fourteenth Amendments.  Plaintiffs may bring federal civil causes of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution" under Section 1983 of the U.S. Code.[53]  But, state defendants may incur personal liability only if they participated in the alleged constitutional violation.[54]

   1.     *Tyler's Allegations Regarding the Living Conditions in MRA Cells Are Not Sufficiently Serious to State a Constitutional Claim*

Tyler's remaining claims regarding the conditions in his MRA cell are that MRA toilets are not flushed at regular intervals, causing an unsanitary environment, and that the MRA cells lack sunlight, effectively turning the cells "into sensory deprivation torture chambers."[55]  Under the Eighth Amendment, prison officials must "provide humane conditions of confinement by

---

[51] *Bell v. Ward*, 189 F. App'x 802, 803–04 (10th Cir. 2006) (citation omitted).

[52] *See Gallagher*, 587 F.3d at 1068 ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be without prejudice.") (citation omitted).

[53] *Becker v. Kroll*, 494 F.3d 904, 913 (10th Cir. 2007) (citing 42 U.S.C. § 1983)).

[54] *See Duffield v. Jackson*, 545 F.3d 1234, 1238 (10th Cir. 2008) (holding that State defendants may incur personal liability only if they participated in the alleged constitutional violation).

[55] Plf.'s Compl., Doc. 1, at 7.

ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care."[56]  But, the Eighth Amendment "does not mandate comfortable prisons, and conditions imposed may be restrictive and even harsh."[57]  Thus, to state a "conditions of confinement" claim under the Eighth Amendment, an inmate must establish that: (1) the condition complained of is "sufficiently serious" to implicate constitutional protection, and (2) prison officials acted with "deliberate indifference" to inmate health or safety.[58]

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered."[59]  "While no single factor controls . . . the length of exposure to the conditions is often of prime importance."[60]  As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to establish a constitutional violation decreases.[61]  On the other hand, the Supreme Court has mandated that the judicial branch accord deference to prison authorities "who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."[62]  "[M]aintaining internal security and preserving internal order and discipline are essential

---

[56] *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (citation omitted).

[57] *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998) (citation and quotation marks omitted).

[58] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted).

[59] *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (citation omitted).

[60] *Id.*

[61] *Id.*

[62] *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." [63]

Here, Tyler asserts that over the course of two years, he has been held in MRA cells for 6.5, 10.5, and 3.5 month intervals. During that time, he was unable to flush his toilet and had no access to natural light inside his cell. Although inmate exposure to sewage can constitute a serious risk of harm sufficient to satisfy the objective component of an Eighth Amendment claim,[64] this Court, and others, have rejected Eighth Amendment claims where inmates complained of exposure "to the odor of human waste" resulting from the inability to flush their toilets.[65] Here, although Tyler could not flush his toilet himself, he asserts that MRA cells are flushed approximately eight times per day. This simply does not rise to the level of a constitutional violation.

Further, although lack of access to natural light over a lengthy period may constitute a constitutional deprivation,[66] Tyler does not dispute the *Martinez* Report evidence that MRA inmates are allowed outdoor exercise or that he was given the opportunity to see the Segregation Review Board ("SRB") twice a week to review his MRA status. In fact, Tyler admits that he refused to attend the SRB reviews which could have resulted in his removal from MRA status.[67]

---

[63] *Bell v. Wolfish*, 441 U.S. 520, 546 (1979).

[64] *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2011).

[65] *See, e.g.*, *Purkey v. McKune*, 2005 WL 61497, at *4 (D. Kan. 2005) (distinguishing exposure to human waste from exposure to the odor of human waste); *Jihad v. Wright*, 1997 U.S. App. LEXIS 21624, at *7–8 (7th Cir. 1997) (concluding that "discomfort from the smell of the unflushed toilet which was flushed every four hours by prison officers . . . is not sufficiently serious to support a claim under the Eighth Amendment"); *Robinson v. Reese*, 2013 WL 1282334, at *1 (N.D. Ala. 2013) (holding that the plaintiff's inability to flush his toilet on demand did not constitute cruel and unusual punishment where his toilet was flushed by guards 6 to 8 times per day).

[66] *See Robinson v. Corriveau*, 1995 U.S. App. LEXIS 34989, at *12 (10th Cir. 1995) ("[Plaintiff] alleged that he has been deprived of natural light and fresh air for the past seven months (now thirteen months). It is unlikely that such extended deprivation of natural light and air would meet the minimal health and safety needs of prisoners.").

[67] Plf.'s Resp. to Martinez Report, Doc. 17, at 3.

Thus, it appears from the undisputed facts of the *Martinez* Report and Tyler's Complaint that Tyler did have the opportunity to be exposed to natural light during his months in MRA confinement, even though natural light did not reach inside his cell. The Court therefore concludes that Tyler has not alleged a "sufficiently serious" deprivation.[68]

2.   *Tyler's Claim for Lack of Adequate Mental Health Care Does Not State a Claim Under the Eighth or Fourteenth Amendments*

Tyler's final remaining claim is that Van Hoos, Stiggins, and Bell prevented him from receiving adequate mental health care in violation of the Eighth and Fourteenth Amendments. Under the Eighth Amendment, the state has an "obligation to provide medical care for those whom it is punishing by incarceration."[69] A § 1983 claim cannot be based on mere negligence, however.[70] Rather, "prison officials violate the Eighth Amendment's ban on cruel and unusual punishment if their 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain.' "[71]

---

[68] *Lewis v. McKinley Cty. Bd. of Cty. Comm'rs*, 425 F. App'x 723, 727 (10th Cir. 2011) (agreeing with the district court that the plaintiff's "complaint that her cell lacked daylight and adequate toilet privacy, that it was filthy and had to be sprayed regularly for bacteria, that the shower drain was clogged, that she was allowed exercise only one or two times per week, and that the food was unappetizing" did not rise to the level of a constitutional violation); *Preece v. Cooke*, 2014 U.S. Dist. LEXIS 160957, at *26 (D. Colo. 2014) (concluding that "Plaintiff's allegations that he was denied access to fresh air, outdoor exercise, a 'pull-up bar,' and access to natural light do not allege that he was deprived of a human need"), *report and recommendation accepted in part, rejected in part at* 2014 WL 6440406 (D. Colo. 2014).

[69] *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *see also Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) ("Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act deliberately and indifferently to serious medical needs of prisoners in their custody.").

[70] *Jones v. Salt Lake Cty.*, 503 F.3d 1147, 1163 (10th Cir. 2007) (citation omitted).

[71] *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle*, 429 U.S. at 104).

The deliberate indifference standard includes both an objective and subjective component.[72]  To satisfy the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension."[73]  "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[74]

"[U]nder the subjective inquiry, the prison official must have a 'sufficiently culpable state of mind.' "[75]  An "inadvertent failure to provide adequate medical care" does not give rise to a claim under 42 U.S.C. § 1983; nor do allegations regarding mere negligence or malpractice give rise to such a claim.[76]  The Supreme Court has "made clear" that "a prison official cannot be liable 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' "[77]

Thus, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."[78]  Simply put, "no claim of constitutional dimension is stated where a prisoner challenges only matters of medical judgment or otherwise expresses a mere

---

[72] *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

[73] *Self*, 439 F.3d at 1230 (quoting *Farmer*, 511 U.S. at 834).

[74] *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (quotation marks and citation omitted).

[75] *Self*, 439 F.3d at 1230–31 (quoting *Farmer*, 511 U.S. at 834).

[76] *Id*. at 1230.

[77] *Id*. at 1231 (quoting *Farmer*, 511 U.S. at 837).

[78] *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citations omitted).

difference of opinion concerning the appropriate course of treatment."[79]  Here, Tyler asserts that he was forbidden from attending behavioral therapy groups or other mental health programming. He also asserts that he was denied access to mental health aids, such as books, paper, information packets, and colored pencils.  Tyler admits, however, that he was provided his medications.  The Court therefore concludes that Tyler's desire for additional or different treatment is best framed as a disagreement about his course of treatment.[80]  Tyler's allegations do not plausibly demonstrate that Defendants have consciously disregarded a substantial risk of serious harm to him.[81]  His Eighth Amendment claim is therefore dismissed.

Tyler also fails to state an Equal Protection claim.  To state an Equal Protection claim, Tyler must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[82]  Tyler's Complaint does not set forth any allegations of disparate treatment.  Construing Tyler's pro se pleadings liberally, the Court finds no support for this claim.  Tyler's claim for violation of the Equal Protection clause is also dismissed.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 23) is **GRANTED**.

---

[79] *Smith v. Harvey Cty. Jail*, 889 F. Supp. 426, 430 (D. Kan. 1995) (citing *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992)).

[80] *See Spencer v. Abbott*, 731 F. App'x 731, 747 (10th Cir. 2017) (finding that providing some treatment "is easily distinguishable from circumstances involving a medical professional's *complete* denial of obviously necessary medical care") (emphasis added).

[81] *Self*, 439 F.3d at 1231; *see also Page v. Schnurr*, 2021 WL 3634687, at *1, 5 (D. Kan. 2021) (dismissing Eighth Amendment claim where the plaintiff stated that he received prescribed psychotropic medication but was denied mental health books and participation in substance abuse group therapy and counseling).

[82] *A.N. v. Syling*, 928 F.3d 1191, 1196 (10th Cir. 2019) (citation omitted).

**IT IS SO ORDERED**.

This case is closed.

Dated this 23rd day of December, 2021.

*[signature: Eric F. Melgren]*

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE